UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEAH KELLY,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>WAL MART STORES, INC.,<br><br>　　　　　　　　Defendant. | Case No.: 3:16-cv-02000-L-AGS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION [Doc. 31] FOR SUMMARY JUDGMENT** |

　　　Pending before the Court is Defendant Wal Mart Stores, Inc.'s ("Walmart") motion for summary judgment. Pursuant to Civil Local Rule 7.1(d)(1), the Court decides the matter on the papers submitted and without oral argument. For the reasons stated below, the Court **GRANTS IN PART** and **DENIES IN PART** Walmart's motion.

//
//
//
//
//
//
//

1

## I. BACKGROUND

Plaintiff Leah Kelly ("Kelly") was an employee at Walmart's store in Santee, California from 2005 until April 2016. Kelly worked as an optician. Since she was thirteen years of age, Kelly has suffered from intractable epilepsy. Throughout her employment, Kelly kept Walmart apprised of her condition.

In late March / early April of 2015, Kelly suffered from a cluster of seizures and, as a result, had to miss some time at work. On April 24, 2015 Kelly's neurologist, Dr. Evelyn Tecoma, indicated Kelly was fit to return to work. Shortly thereafter, Kelly informed her supervisor, Susan Regano ("Regano") that she was cleared to return to work and requested accommodation in the form short leaves of absence after seizures. Regano then sent an email to human resources complaining that Kelly's ongoing seizure disorder created a risk of harm to herself and others and seeking guidance on how to handle this issue.

On May 1, 2015, Walmart placed Kelly on paid leave pending completion of a fitness to serve process. As part of the process, Walmart sent Kelly to visit a physician named Dr. Bruce Hoang for an assessment. Dr. Hoang filled out return to work paperwork suggesting Kelly could return provided she did not drive a car, operate machinery, and avoided heights—three things Kelly's job did not require. Dr. Hoang also cautioned that Kelly should avoid "other situations" that could cause harm to Kelly or others. However, Dr. Hoang neglected to define what those "other situations" included.

Walmart found Dr. Hoang's paperwork confusing and therefore sent Kelly a letter requesting more information about her current medical condition from Dr. Tecoma. Dr. Tecoma sent a responsive letter stating that Kelly's return to work would not present a risk of harm to herself or others and explained various ways Walmart could assist Kelly during and after a seizure. Under Walmart's interpretation of Dr. Tecoma's letter, it concluded it could not safely accommodate Kelly and therefore placed her on unpaid leave. Over a period of several months, Walmart and Kelly engaged in a drawn out

exchange during which Kelly repeatedly said she had been seizure free for a while and could safely return to work and Walmart repeatedly sought further medical information.

On February 5, 2016, Kelly's doctor sent a letter to Walmart stating Kelly had been seizure free since March 27, 2015 and recommended as an accommodation only that Kelly continue taking her medication as prescribed. Upon receipt of this letter, Walmart decided to allow Kelly to return to work. To facilitate Kelly's return, a human resources employee named Adam Bower had a meeting with Kelly in early March 2015 at which he asked her when she could return to work. Kelly resisted, indicating she did not want to return to work unless Walmart provided back pay and guaranteed her a specific work schedule.

Throughout March and April, Bower communicated with Kelly several additional times with an aim of getting her to return to work. Because his efforts remained unsuccessful, Bower emailed Kelly on April 20, 2015 and informed her she was scheduled to return to work April 23, 2015. Kelly did not show up to work or call in. Kelly also missed two subsequent, consecutive shifts she was scheduled to work. Pursuant to Walmart corporate policy permitting no more than two consecutive failures to call in or report to a scheduled shift, Walmart terminated Kelly's employment.

On July 7, 2016, Kelly filed a complaint with the Superior Court of California, County of San Diego, alleging wrongful termination and violations of California's Fair Employment and Housing Act ("FEHA") in the form of disability discrimination, failure to accommodate, and failure to engage in the interactive process. (Compl. [Doc. 1-2 Ex. A].) Kelly's complaint includes a prayer for punitive damages. Walmart removed to this Court on August 9, 2016. (Rem. Not. [Doc. 1].) Walmart now moves for summary judgment as to all claims for relief and as to the prayer for punitive damages. (MSJ [Doc. 31].)[1] Kelly opposes. (Opp'n [Doc. 35].)

---

[1] Kelly argues that she did not receive fair notice that Walmart was moving for summary judgment as to all claims and as to the prayer for punitive damages. This argument lacks merit because the second page

3

3:16-cv-02000-L-AGS

## II. LEGAL STANDARD

Summary judgment is appropriate under Rule 56(c) where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Id.* at 322–23. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

"[T]he district court may limit its review to the documents submitted for the purpose of summary judgment and those parts of the record specifically referenced therein." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir. 2001). Therefore, the court is not obligated "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (*citing Richards v. Combined Ins. Co. of Am.*, 55 F.3d 247, 251 (7th Cir. 1995). If the moving party fails to discharge this initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

---

of the notice of motion clearly explains in bullet point format exactly what relief Walmart is seeking. So too does the motion itself.

1    If the moving party meets this initial burden, the nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita Elect. Indus. Co., Ltd. v Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the nonmoving party must "go beyond the pleadings" and by "the depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ P. 56(e)).

When making this determination, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *See Matsushita*, 475 U.S. at 587. "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment." *Anderson*, 477 U.S. at 255.

### III. FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS

FEHA provides that it is unlawful for an employer "to fail to engage in a timely, good faith, interactive process with [an] employee … to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation …" Cal. Gov. Code § 129400(n). There is no requirement that the interactive process take any specific, ritualized form. *Nealy v. City of Santa Monica*, 234 Cal. App. 4th 359, 379 (2015). All that is necessary is that the employer engage in an informal, good faith dialogue with the employee for purposes of identifying any potential reasonable accommodations. *Id.* This obligation to engage in good faith is continuing, such that an employer who ultimately causes a breakdown in communication cannot escape liability by proving that it engaged in good faith dialogue earlier in the process. *Swanson v. Morongo Unified School Dist.*, 232 Cal. App. 4th 954, 971–72.

Here, the interactive process began when Kelly submitted a request for accommodation. Walmart employee Joe Rubino ("Rubino") quickly sent a response with a detailed request for additional information from Dr. Tecoma. (Docs 31-4 Exs. A, B.)

Dr. Tecoma then sent Rubino a responsive letter providing a fuller description of Kelly's fitness for work and recommendations as to how Walmart could help accommodate her. (Doc. 31-3 Ex. L.) Within a month of receiving Dr. Tecoma's response, Rubino sent Kelly a letter stating that Walmart was placing her on unpaid leave because it concluded she presented a "significant risk of substantial harm to [herself] and other associates while having a seizure which could not be eliminated or reduced through reasonable accommodation." (Doc. 31-4 Ex. C.) Rubino also explained to Kelly how she could appeal this decision and provided her with an appeal form. (Id.)

Subsequently, on August 19, 2015, Kelly filed an appeal stating she had been seizure free for over four months and indicating she would submit additional medical information within fifteen days. (Doc. 31-4 Ex. D.) On September 17, 2015, after almost a full month passed without Kelly submitting additional medical information, Rubino sent her a letter asking that she have her doctor send him a letter explaining how frequent Kelly's seizures might be going forward, given that she had been seizure free about five months. (Doc. 31-4 Ex. E.) Because Kelly remained unresponsive to the request for further medical information from her doctor, Rubino called her during the month of October and asked if she would provide the requested information. (Rubino Dep. 47.) Kelly remained unresponsive. Rubino therefore notified her via letter on October 22, 2015 that Walmart denied her appeal and informed her that Walmart would consider another appeal if she wished to file one. (Doc. 31-4 Ex. F.)

Kelly filed a second appeal on October 30, 2015, indicating that she had been seizure free for seven months, was very healthy, and asked for a decision on the materials already submitted. (Doc. 31-4 Ex. G.) On November 20, 2015, Rubino sent Kelly a letter indicating receipt of her second appeal and requesting medical documentation to substantiate that she had been seizure free for seven months. (Doc. 31-4 Ex. H.) Rubino sent Kelly another letter on January 11, 2016 indicating he had not received any of the requested medical information and posed four specific questions for her doctor to answer about her seizure disorder. (Doc. 31-4 Ex. I.) Upon receipt of a February 5, 2016

response from Kelly's doctor indicating Kelly had been seizure free since March 27, 2015, Walmart told Kelly she could return to work. (Docs. 31-4 Exs. J, K; Rubino Dep. 66.)

Kelly does not dispute the accuracy of any of the foregoing evidence. Rather, Kelly's opposition argues only that Walmart violated the interactive process by keeping her on leave for nearly a year when her doctor had indicated she was fit to return to work. This argument conflates a failure to engage in the interactive process claim with a failure to accommodate claim because it focuses on the result of the interactive process rather than on the process itself. See *Wysinger v. Automobile Club of So. Cal.*, 157 Cal. App. 4th 413, 424 (2007) (explaining that a failure to accommodate claim and a failure to engage in the interactive process claim are separate and distinct claims). Because Kelly does not dispute Walmart's evidence showing that it engaged Kelly in a robust good faith dialogue from the time she requested accommodation all the way until the time it cleared her to return to work, the Court **GRANTS** Walmart's motion as to the claim for failure to engage in the interactive process.

### IV. FAILURE TO ACCOMMODATE

FEHA provides that it is unlawful "to fail to make reasonable accommodation for the known physical or mental disability of an applicant or employee" unless doing so would produce an undue hardship. Cal. Gov. Code §12940(m)(1). To make a *prima facie* case for failure to accommodate, a plaintiff must show (1) a FEHA recognized disability; (2) an ability to perform the essential functions of the job; and (3) employer failure to provide a reasonable accommodation for the disability. *Wilson v. Cnty. of Orange*, 169 Cal. App. 4th 1185, 1192 (2009) (internal citations omitted). There appears to be no dispute as to the fact that, at all relevant times, Kelly had a FEHA recognized disability and was capable of performing the essential functions of her job. Rather, the dispute focuses on whether Walmart provided Kelly with a reasonable accommodation.

Walmart argues that the provision of unpaid leave (as opposed to outright termination) was itself a reasonable accommodation. FEHA's implementing regulations specifically enumerate paid or unpaid leave as a form of accommodation that can satisfy §12940(m)(1). 2 C.C.R. § 11068(c). Leave is a reasonable accommodation where it is likely that the employee may return to work upon expiration of the leave. *Jensen v. Wells Fargo Bank*, 85 Cal. 4th 245, 263 (2000). When Walmart put Kelly on unpaid leave, there was no indication that Kelly's condition was expected to improve. Nor was there any indication that Walmart would allow Kelly to return if her condition did not improve. In essence, Walmart's provision of unpaid leave appears to be a declaration that it *would not accommodate* her disability as it existed at the time. Accordingly, for purposes of this motion, the Court finds that Kelly has made a *prima facie* case for failure to accommodate.

Walmart contends that Kelly's claim must nevertheless fail because Kelly's continued employment would be unsafe and unduly burdensome. It is a proper defense if an employer shows that the employee's disability is of a nature such that continued employment would cause undue burden or present a risk of harm to the employee or others even with reasonable accommodation. Cal. Gov't Code § 12940(a)(1); 2 C.C.R. § 11067(a)–(c); *Atkins v. City of Los Angeles*, 8 Cal. App. 5th 696, 733 (2017).

Walmart's affirmative defenses rely on Dr. Tecoma's letter responsive to Rubino's inquiries about Kelly's medical condition. In her letter, Dr. Tecoma stated,

> #1 ***[Kelly] should be able to perform her outlined essential functions without a threat to herself or others as outlined in her job description.***
>
> #2 If a seizure occurs, in most cases, it will be obvious to the observer, [Kelly] will most likely not be able to carry out such tasks as 'calibrating' diagnostic equipment immediately following a seizure. [Kelly] should be able to resume such tasks after being allowed five days of recovery per seizure.
>
> #3 If [Kelly] has a seizure in the work place, she should be gently assisted to a safe area, hard or sharp objects removed from her area. If she experiences

8

> a fall, then her environment should be assessed for any unsafe surround objects, such as a shopping cart near her head, or hot beverage, etc. and these should be removed from her immediate area. If she is injured with a fall from a seizure then she should be taken to the nearest emergency room.
>
> #4 Remain with [Kelly] and stay calm. Assist her to a chair or ease her to the floor. Do not place anything in her mouth. If the seizure lasts longer than five minutes, then call 911. If seizure is less than five minutes, stay with her until she returns to baseline and call her family.
> (Doc. 31-3 Ex. L) (emphasis added.)

Walmart's proffered reading of this letter is that Kelly can safely perform her job only if other employees are standing by able and willing to help her to the floor, remove dangerous objects from her area, and time her seizures.[2] Walmart argues that, because its associates are unqualified to perform these tasks, Kelly's continued employment posed a threat of harm to herself. Walmart further argues that Kelly's continued employment presented a threat of harm to others because responding to Kelly's seizures has caused one employee physical injury and a number of employees have suffered stress and anxiety.

The problem with Walmart's argument is that it ignores evidence suggesting Kelly could perform her job without posing a threat of harm to herself or others. In response to a direct question, Dr. Tecoma clearly stated Kelly could do her job without any risk of harm to self or others. (Doc 31-3 Ex. I: Doc. 31-3 Ex. L ¶ 1.) Tecoma separately responded to other questions from Walmart asking for advice on how associates might be able to assist her during and after a seizure. (Doc. 31-3 I; Doc. 31-3 Ex. L ¶¶ 2–4.) However, it is not clear that Dr. Tecoma's responses to these other questions were meant to qualify her separate statement that Kelly's return to work should present no threat of

---

[2] Walmart also complains about Dr. Tecoma's recommendation that associates wait five minutes before calling 911. The Court need not address this concern in depth because Walmart simply could have disregarded Dr. Tecoma's suggestion, stuck with its corporate policy, and called 911 immediately. Kelly and others would face no resulting increased risk of harm from promptly dialing 911.

9

harm to anyone. Further, there is evidence suggesting (1) that Kelly has never suffered harm from a seizure beyond some bruising (Kelly Dep. 57; Tecoma Dep. 32) and (2) that Kelly has never actually needed any help from her fellow associates because of a seizure (Kelly Dep. 72, 75.)

Viewing this evidence in a light most favorable to Kelly as the non-moving party, the Court finds that Walmart has failed to establish as a matter of law that allowing Kelly to return to work in August of 2015 would have created undue hardship for Walmart or presented a threat of harm to anyone. Accordingly, the Court **DENIES** Walmart's motion for summary judgment as to the failure to accommodate claim.

## V. WRONGFUL TERMINATION

Kelly alleges Walmart wrongfully terminated her because of her disability. (Compl. ¶¶ 27–33.) Under FEHA, it is generally unlawful for an employer to terminate an employee because of a physical disability. Cal. Gov. Code § 12940(a). A violation of this FEHA provision can trigger a common law claim for wrongful termination. *Stevenson v. Superior Court*, 16 Cal. 4th 880, 890 (1997).

The burden shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) governs FEHA disability discrimination claims. *Sandell v. Taylor-Listug, Inc.*, 188 Cal. App. 4th 297, 307 (2010). Under this framework, a plaintiff has the initial burden of establishing a *prima facie* case of discrimination. *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 354–55 (2000). If a plaintiff makes a *prima facie* case, a rebuttable presumption of discrimination arises. This shifts the burden to the defendant to articulate a legitimate (non-discriminatory) reason for the termination. *McDonnel Douglas Corp*, 411 U.S. at 802. If the defendant carries this burden, it prevails on the discrimination claim unless the plaintiff shows that the defendant's proffered reason is pretextual. *Id.* at 804. Here, Walmart contends that it is entitled to summary judgment because, even if Kelly could make a *prima facie* case of discrimination, Walmart has articulated a

10

3:16-cv-02000-L-AGS

legitimate reason for Kelly's termination (i.e. that she failed to report to work for three days straight) which Kelly has not shown to be pretextual.

The Court agrees. Upon receipt of the letter from Kelly's doctor indicating she had been seizure free for a sustained period, Walmart instructed Kelly to contact Adam Bower to set up a meeting to discuss her return to work. (Doc. 31-4 Ex. K.) Kelly and Bower then had a meeting on March 10, 2016. (Bower Dep. [Doc. 31-1 Ex. M] 18.) At that meeting, Bower asked Kelly when she would be able to return to work. (Id. at 13.) Kelly said she would only return to work if she was given back pay, a specific schedule, and guaranteed forty hours per week. (Id. at 13–14.) Bower responded that he would have to check on back pay but that she could return to work under the same conditions she worked under before: as a full time employee who, depending upon her availability, could work up to forty hours a week. (Id. at 13, 14, 25.)

Subsequent to the meeting Bower had a phone conversation with Kelly in which she stated she would not return to work without back pay. (Bower Dep. at 18.) Bower responded that she was not eligible for back pay and then asked if and when she would return to work. (Id. at 18) Kelly hung up without responding. (Id.) Subsequently Bower and Kelly exchanged emails in which (1) Kelly complained of not being guaranteed a specific schedule; (2) Bower told her she could return to work under the same arrangement as before and asked her again when she could return; and then (3) Kelly stated "I will get back to you in due course about whether I will return to Walmart unless you fire me first." (Doc. 35-3 Exs. F, G.)

As of April 20, 2016, Kelly remained unresponsive to Bower's inquiry as to when she would return to work. Bower therefore emailed Kelly explaining that she was scheduled to return to work Saturday April 23, 2016 and, if she did not show, Walmart would assume she was not interested in returning to work and proceed accordingly. (Doc. 31-3 Ex. N.) Kelly did not show up for work or call in on April 23, 2016. (Doc. 31-3 Ex. E.) Kelly also failed to show up or call in on April 24 and 25, 2016. (Id.) Walmart's corporate policy is that an associate is considered to have abandoned their job

if they fail to show up or call in for three workdays. (Id.) Walmart therefore notified Kelly via letter dated April 27, 2016 that, because she had failed to show up or call in for three consecutive work days, it was processing her voluntary resignation effective immediately. (Id.)

Failure to comply with a corporate policy requiring employees to show up to work is undoubtedly a legitimate basis for terminating employment. The Court therefore finds that, per the *McDonnell Douglas Corp.* burden shifting framework, Kelly's wrongful termination claim must fail unless she shows this proffered justification is pretextual. Kelly attempts to carry this burden by stating she did not resign because she emailed Bowers on the third missed day stating that she could return to work after giving her current employer two weeks' notice. (Doc. 35-3 Ex. F.)

This email is insufficient. Undisputed evidence shows that by the time Kelly sent this email she had already resisted Walmart's repeated invitations to return work for about two months and failed to report to three consecutive shifts. On these facts, no reasonable jury could conclude that Walmart is lying when it says it terminated Kelly's employment pursuant to corporate policy governing unexcused absences. FEHA simply does not require an employer to retain an employee who continually refuses to come back to work. Accordingly, the Court **GRANTS** Walmart's motion as to the common law wrongful termination cause of action. For the same reasons, the Court also **GRANTS** Walmart's motion as to the disability discrimination cause of action, but only to the extent it is based on the termination of Kelly's employment.

//
//
//
//
//
//
//

## VI. PUNITIVE DAMAGES

Punitive damages are available for FEHA violations. *Commodore Home Sys., Inc. v. Superior Court*, 32 Cal. 3d 211, 214–15 (1982). To recover punitive damages, Kelly would have to present clear and convincing evidence that Walmart "has been guilty of oppression, fraud, or malice…" Cal. Civ. Code § 3294. Walmart argues it is entitled to summary judgment on the punitive damages issue because not one of its agents' actions trigger any of these three prongs.

The Court disagrees. "Malice," for purposes of the punitive damages analysis, includes "conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others" Cal. Civ. Code § 3294(c)(1). Kelly argues that Walmart's agents intentionally misinterpreted (in a self-serving fashion) Dr. Tecoma's letter (Doc. 31-3 Ex. L) indicating she was fit to return to work without presenting a risk of harm to herself or others. Viewing all evidence in favor of Plaintiff as the non-moving party, the Court finds that a reasonable jury could credit this argument and thereby find that Walmart acted maliciously. Accordingly, the Court **DENIES** Defendant's motion as to the prayer for punitive damages.

//
//
//
//
//
//
//
//
//
//
//

## VII. CONCLUSION AND ORDER

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Walmart's motion for summary judgment as follows:

- The Court **GRANTS** summary judgment as to the claims alleging failure to engage in the interactive process and wrongful termination.
- The Court **GRANTS** summary judgment as to the FEHA discrimination claim, but only to the extent it is based on the termination of Kelly's employment.
- The Court **DENIES** Defendant's motion as to the FEHA discrimination claim to the extent it is not based on the termination of Kelly's employment.
- The Court **DENIES** Defendant's motion as to the FEHA failure to accommodate claim.
- The Court **DENIES** Defendant's motion as to the prayer for punitive damages.

**IT IS SO ORDERED.**

Dated: December 4, 2017

_____
Hon. M. James Lorenz
United States District Judge